Merrick, P.J.
These consolidated cross-actions to dissolve or establish a “mechanic’s lien” require interpretation, apparently for the first time, of the 1996 amendment to G.L.c. 254 which defined the “written contract” required to secure such a lien.
Donald M. and Doreen Harris (the “Homeowner”) hired Roger Karter (the “Contractor”) to build a home at 15 Galeucia Drive in Middleton, Massachusetts. In preparing his bid for the job, the Contractor requested an estimate for virtually all the materials needed for the home construction from Moynihan Lumber of Beverly, Inc. (“Moynihan”). Moynihan supplied the contractor with a handwritten quote, dated March 19, 1998, for what appears to be doors and windows, which identified the job as “Mr. & Mrs. Donald Harris.” Moynihan also supplied a computer-printed quotation, dated March 26, 1998, for the other building materials needed. The printed estimate was on seven pages of Moynihan’s invoice form, but noted “This is not a receipt" and bore the legend “Estimate only. Good for 7 days.” The documents were not signed by either the Contractor or Moynihan.
On April 28,1998, after the Contractor and the Homeowner entered into a contract, the Contractor signed the printed contract form provided by Moynihan (“Sales Contract”). The signed form included boilerplate language generally concerning delivery and payment. The spaces for the description and price of the goods sold were left blank. The “Project Name” was identified as “Harris,” and the “Project Location” was stated as “15 Galeucia Drive Middleton.” At the same time, the Contractor completed and signed a credit application which described the delivery site as “15 Galeucia Drive Middleton.”
Moynihan delivered the ordered goods to the site, but the Homeowner and the Contractor had a falling out during the job. Funds stopped flowing to the Contractor who, in turn, stopped paying Moynihan. Moynihan recorded a Notice of Contract under G.L.c. 254, §4 to establish a lien on 15 Galeucia Drive, in consequence of which the mortgagee bank, Warren Five Cents Savings Bank (the “Bank”), refused to disburse additional construction loan funds to permit the Homeowner to complete the project with a new contractor.
On September 5,1998, the Homeowner filed an action to dissolve the lien pur *114 suant to G.Lc. 254, §15A, and moved to dissolve the lien on the sole ground that Moynihan did not have the “written contraed’ necessary to support a mechanic’s lien.[3] On September 23, 1998, the trial court allowed the motion to dissolve the lien. Moynihan filed a complaint the next day against the Contractor, the Homeowner and the Bank to establish its claim against the Contractor and its lien. A second judge dismissed that action as to the Homeowner and the Bank, and consolidated the cases for appeal. Moynihan thereafter brought this Dist./Mun. Cts. RAD. A., Rule 8A appeal.
1. Section 4 of G.L.c. 254 provides, in relevant part:
Whoever furnishes labor,... or who furnishes material... under a written contract with a contractor, or with a subcontractor of such contractor, may file or record in the [appropriate] registry of deeds... a notice of his contract....
Upon filing or recording a notice, as hereinbefore provided, and giving actual notice to the owner of such filing, the subcontractor shall have a lien upon such real property, land, building, structure or improvement owned by the party who entered into the original contract....
Prior to 1997, the “written contract” required as the basis for a mechanic’s lien was defined by the Appeals Court as follows:
We think that the provision in [c. 254,] §4 that the notice of contract be of a ‘written contract,’ means an entire and continuing arrangement in writing between a supplier and a subcontractor, as, for example, a requirements contract satisfying G.L.c. 206, §2-306. It does not mean to us merely a series of purchase orders and invoices issued from time to time without any pre-existing written agreement imposing on either the supplier or the subcontractor, or both of them, an obligation thereafter to issue or to receive any such orders or invoices.
Gettens Electrical Supply Co. v. W.R.C. Properties, Inc., 21 Mass. App. Ct. 658, 660-661 (1986). This interpretation has been described by commentators as “restrictive,” Crimmins, A Practical Approach to Mechanics Liens: Major Changes in the Mechanics Lien Statute, at 9 (M.C.L.E. 1997), and as an “awkward conclusion.” Alexander, Construction-Mechanics Liens, 81 Mass. L. Rev. 167, 168 (1996).
In Chapter 364 of the Acts of 1996, the Legislature addressed this and several other issues in a major, to use a construction term, renovation of Chapter 254. Among other changes, the Legislature defined “written contract” as “any written contract enforceable under the laws of the commonwealth.” G.L.c. 254, §2A added by St. 1996, c. 364, §3. The homeowner’s interest, we note, is protected by statutory language providing that the subcontractor’s lien “shall not exceed the amount due or to become due under the original contract as of the date notice of the filing of the subcontract is given by the subcontractors to the owner.” G.L.c. 254, §4. In interpreting the new definition of “written contract” as “any written contract enforceable under the laws of the commonwealth,” we are guided by the recognition in the revision of c. 254 that “the true financiers of a construction project are the contractors and suppliers who provide labor and materials well before they are paid.” 81 Mass. L. Rev., supra at 168. If the statutory definition is not to be treated as redundant, it should be construed as meaning a memorandum or writing sufficient to satisfy the various Massachusetts statutes of frauds, see, e.g., G.Lc. 259, §1; G.Lc. 106, §§1-206 & 2-201, the requirements of which are less stringent than *115 the Gettens standard of “an entire and continuing arrangement in writing.”
2. Applying these considerations to the present case, we consider the documents (“Sales Contract,” credit application and price quotations) and circumstances outlined above. It is certainly true that the requisite memorandum need not be a single document. Colt v. Fradkin, 361 Mass. 447, 453 (1972); Clark v. Olejnik, 240 Mass. 215, 217 (1921). The notation “Estimate only. Good for 7 days” on one of the quotations was a common type of provision designed merely to protect Moynihan from price fluctuations. It was no barrier to the Contractor’s later written acceptance of the quotes, subject to Moynihan’s re-approval as manifested by its delivery of the goods. Indeed, even a letter of rejection may, in some circumstances, satisfy a portion of the memorandum requirement. Waltham Truck Equip. Corp. v. Massachusetts Equip. Co., 7 Mass. App. Ct. 580, 583 (1979).
A memorandum of a contract need only give assurance that the contract enforced was in fact made and provide evidence of its terms. It may consist of several separate documents, even though not all of them are signed and even though no one of them is itself a sufficient memorandum. At least one must be signed by the party to be charged, and the documents and circumstances must be such that the documents can be read together as “some memorandum or note” of the agreement.
RESTATEMENT (SECOND) OF CONTRACTS §132, comment a (1981). The connection between the papers may be established by oral evidence which, together with the content of the documents and the surrounding circumstances, shows that
all of the different papers which are so to be considered together were brought to the attention of both parties, and were linked together in their minds, so that the parties themselves may be found to have adopted all the papers as the expression of their purpose.
Nickerson v. Weld, 204 Mass. 346, 356 (1910). Compare Andre v. Ellison, 324 Mass. 665, 667 (1949).
The documents in this case would be unassailable as a memorandum of contract if they were stapled together. They do, in any event, all refer to the “Harris” project and/or “15 Galeucia Drive Middleton.” In Providence Granite Co. v. Joseph Rugo, Inc., 362 Mass. 888, 889 (1972), the Supreme Judicial Court held that a telegram from the buyer of construction stone to the seller, confirming without further specifics that a contract had been made, was sufficient, together with the testimony of the buyer’s officer, to render the contract enforceable against the buyer under G.L.c. 106, §2-201. We conclude that the written quotations and the signed, if incomplete, contract in this case are sufficient to satisfy the Statute of Frauds. Accordingly, they are sufficient to serve as the foundation for a lien under G.L.c. 254, §4.
In Harris v. Moynihan Lumber of Beverly, Inc., et al., No. 9836-CV-1330, the order dissolving the mechanic’s lien is vacated. That action is ordered dismissed.
In Moynihan Lumber of Beverly, Inc. v. Karter, et al., No. 9836-CV-1423, the separate and final judgment dismissing the action as against Warren Five Cents Savings Bank, Donald M. Harris and Doreen E. Harris is vacated, and the case is to stand for further proceedings.
So ordered.

 The parties have raised no other issues as to either the procedures followed by Moynihan in asserting the lien, or its amount.