Swan, J.
The plaintiff, HSBC Bank USA National Association as Trustee for MANA 2007-F1 (“HSBC”), is the grantee of a mortgage foreclosure deed of real estate, located at 9-11 Touro Avenue, Medford (“Premises”), from Central Mortgage Company (“Central Mortgage”). HSBC commenced this summary process action against the mortgagors, Stephen Galehach and Diane Galebach[3] (collectively, “the Galebachs”), and another, Diane Caress (“Caress”), who were still occupying the Premises after foreclosure. In their answer, the Galebachs claimed that HSBC did not have good title to the Premises because of defects in the foreclosure. After discovery was conducted, HSBC first obtained a pretrial order for use and occupancy payments, and then filed and prevailed on a motion for summary judgment for possession and damages for use and occupancy of the Premises. The Galebachs have appealed that judgment. While neither denying the default in mortgage payments nor challenging the propriety of the content or serving of the notice to quit, the Galebachs contend that genuine issues of fact exist as to the validity of HSBC’s title, with respect both to the documents evidencing the foreclosure sale and to the conduct of the sale itself, including the payment of consideration by the highest bidder and the decision of the foreclosing mortgagee not to postpone the auction due to inclement December weather and the paucity of bidders.
Challenging a plaintiffs entitlement to possession has long been considered a valid defense to a summary process action for eviction where the property was purchased at a foreclosure sale. See New England Mut. Life Ins. Co. v. Wing, 191 Mass. 192, 195 (1906) (in summary process action ‘by the purchaser at a mortgagee’s sale, the legal title may be put in issue, and *156 it therefore became incumbent upon the plaintiff to establish its right of possession to the land demanded’) - See also Sheehan Constr. Co. v. Dudley, 299 Mass. 51, 53 (1937) (in summary process action available to purchaser at foreclosure sale ‘it is incumbent upon such purchaser to establish his right of possession. The legal title in those circumstances plainly may be put in issue’).
Bank of N.Y. v. Bailey, 460 Mass. 327, 333 (2011). While the Galebachs and Caress argue that the trial court declined to consider the issue of title, the fact is that HSBC’s motion for summary judgment addressed that very issue. In ruling on the motion, the court did consider it.[4]
To prevail on its motion for summary judgment, HSBC
‘had the burden of showing that there are no material facts in dispute regarding its legal title to the property.’ Metropolitan Credit Union v. Matthes, 46 Mass. App. Ct. 326, 330 (1999), citing Mass. R. Civ. P., Rule 56(c), 365 Mass. 824 (1974), and Sheehan Constr. Co. v. Dudley, [299 Mass. 51, 53-54 (1937)].... In a summary process action for possession after foreclosure by sale, the plaintiff is required to make a prima facie showing that it obtained a deed to the property at issue and that the deed and affidavit of sale, showing compliance with statutory foreclosure requirements, were recorded. See Lewis v. Jackson, 165 Mass. 481, 486-487 (1896); G.L.c. 244, §15.
Bailey, supra at 334-335.[5] In support of it Rule 56 motion, HSBC submitted the affi *157 davit of its attorney, Courtney C. Shea (“Shea Affidavit”), to which were attached copies of pleadings and recorded documents.[6] The test for this motion, as with any motion for summary judgment, is “whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law,” Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991), and we analyze the documents attached to the Shea affidavit in accordance with that principle.
On September 29, 2006, the Galebachs executed a promissory note to Quicken Loans, Inc. and, as security for the loan, a mortgage of the Premises to Mortgage Electronic Registration Systems, Inc. (“MERS”)[7] as nominee for Quicken Loans, Inc. The mortgage was recorded at the Middlesex South District Registry of Deeds. In January, 2009, Central Mortgage informed the Galebachs in writing that they were in default in payments under the note and that they had a right to cure the default by payment of past due moneys owed to Central Mortgage on or before April 5. By a document dated August 12, 2010, and recorded August 27, MERS assigned the mortgage to Central Mortgage.[8] On August 26, Central filed a complaint to foreclose the mortgage in the Land Court, which, on December 14,2010, entered judgment in accordance with the Servicemembers Civil Relief Act authorizing entry and the exercise of the statutory power of sale. According to an affidavit of Janice Davis, Vice President of Central Mortgage (“Davis affidavit”), a notice of sale of the Premises was sent to the Galebachs and published; at the scheduled auction on December 21, 2010, Central Mortgage was the highest bidder for $450,000.00; and Central Mortgage assigned the bid to HSBC. The Land Court judgment, the foreclosure deed from Central Mortgage to HSBC, and the Davis affidavit were later recorded.
The operative title documents attached to the Shea affidavit are attested public records, in compliance with summary judgment requirements that “[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.” Mass. R. Civ. E, Rule 56(e). The substance of those *158 attached documents must then be examined to determine whether “there is no genuine issue as to any material fact,” Mass. R. Civ. E, Rule 56(c), as to the proper execution of the statutory power of sale in compliance with G.L.c. 244, §14. The foreclosure deed itself appears without defect, as does the fact that the highest bidder assigned its position to HSBC. The actual doings of the mortgagee, here Central Mortgage, in exercising the power of sale must be reflected in an affidavit to be recorded with the foreclosure deed. The content of the affidavit is prescribed by statute, G.L.c. 244, §15:
The person selling, or the attorney duly authorized by a writing or the legal guardian or conservator of such person, shall, after the sale, cause a copy of the notice and his affidavit, fully and particularly stating his acts, or the acts of his principal or ward, to be recorded in the registry of deeds for the county or district where the land lies, with a note or reference thereto on the margin of the record of the mortgage deed, if it is recorded in the same registry. If the affidavit shows that the requirements of the power of sale and of the statute have in all respects been complied with, the affidavit or a certified copy of the record thereof, shall be admitted as evidence that the power of sale was duly executed.
The Davis affidavit was proffered for that purpose and states:
*159 “I, Tanice Davis. Vice President (name and title) of Central Mortgage Company, based upon information contained in our books and records as they are kept in the ordinary course of business and certain information provided to us by our attorneys for this matter, make oath and state as follows:
1. The principal and interest obligation mentioned in the mortgage referred to in the attached Exhibit A were not paid or tendered or performed when due or prior to the sale.
2. Central Mortgage Company, by and through its attorneys, caused a notice, of which the following is a true copy, to be published on November 25,2010, December 2,2012 and December 9,2010, in the Medford Transcript, a newspaper having a general circulation in Medford. (See attached Exhibit A)
3. Central Mortgage Company, by and through its attorneys, also complied with Chapter 244, Section 14 of the Massachusetts General Laws, as amended, by mailing the required notices certified mail, return receipt requested.
4. Pursuant to said notice at the time and place therein appointed Central Mortgage Company sold the mortgaged premises at public auction by W. Todd Finn, a duly licensed auctioneer, to Central Mortgage Company for FOUR HUNDRED FIFTY THOUSAND AND 00/100 ($450,000.00) DOLLARS bid by Central Mortgage Company, being the highest bid made therefor at said auction. Said bid was then assigned by Central Mortgage Company to HSBC Bank USA National Association as Trustee for MANA 2007-F1, as evidenced by assignment of bid to be recorded herewith as Exhibit ‘B.’
Central Mortgage Company
Bv:/s/ Tanice Davis
Janice Davis (name)
Vice President (title)”
The signature is followed by an oath before a notary public.[9] The acts recited in the Davis affidavit show strict compliance with the requirements of G.L.c. 244, §14, including recitation of default in the payment of principal and interest; notice to the Galebachs by certified mail;[10] the publication, accurately describing the Premises as set forth in the mortgage, for three successive weeks in “a newspaper with general circulation in the town where the land lies,” id.', and the conduct of the auction, sale to the highest bidder (Central Mortgage), and subsequent assignment of the bid to HSBC. Those acts, however, appear to have been done by someone other than Davis herself. Section 15 of G.L.c. 244 requires that the affidavit be executed by the “person selling” or that person’s attorney “stating his acts, or the acts of his principal or ward” (emphasis added). The statutory model *160 form for a foreclosure affidavit set out as Form 12 of the Appendix to G.L.c. 183"[11] reflects this requirement of an affiant describing his or her acts in the first person. The Davis affidavit describes not her own acts as Vice President of Central Mortgage, but recites what Central Mortgage or its attorneys did. Inasmuch as, “[i]n construing statutes ... [the terms] ‘Person’ or ‘whoever’ shall include corporations, societies, associations and partnerships,” G.L.c. 4, §7, Twenty-third, the acts of a corporation may well be narrated in the third person by one of its officers with knowledge of those actions. But the Davis affidavit does not indicate such personal knowledge.
The deficiencies in the Davis affidavit under G.L.c. 244, §15 are compounded when viewed for its compliance with the summary judgment requirements of Mass. R. Civ. E, Rule 56. A Rule 56 motion’s supporting affidavit must “be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.” Mass. R. Civ. R, Rule 56(e).
‘A useful rough test for evaluating the evidentiary sufficiency of any affidavit is simple: If the affiant were in court, testifying word-for-word in accordance with the contents of the affidavit, would the judge sustain an objection on any ground whatsoever? If the answer is “Yes” or even “Probably,” the affidavit is at risk.’ J.W. SMITH & H.B. ZOBEL, RULES PRACTICE §56.6, at 281 (2d ed. 2007). Another way to examine the admissibility of an affidavit is to ask whether the testimonial competency of the affiant is established through the circumstances. T & S Wholesale, Inc. v. Kavlakian, 1998 Mass. App. Div. 99, 100, citing Stanton Indus., Inc. v. Columbus Mills, Inc., 4 Mass. App. Ct. 793, 794 (1976).
Duffy v. Commerce Ins. Co., 2009 Mass. App. Div. 196, 198.
*161 In this case, the Davis affidavit falls short.[12] She relies “upon information contained in [Central Mortgage’s] books and records as they are kept in the ordinary course of business.” While the “foundation for the admissibility of a business record does not need to be established through the testimony of the preparer or ... the transmitter of the record,” McLaughlin v. CGU Ins. Co., 445 Mass. 815, 819 (2006), Davis fails to state that she is the keeper of those records or that she is familiar with them or that the records comply with G.L.c. 233, §78. Pursuant to §78, “a document is admissible as a business record if the judge finds that it was (1) made in good faith; (2) made in the regular course of business; (3) made before the action began; and (4) the regular course of business to make the record at or about the time of the transaction or occurrences recorded.” Beal Bank, SSB v. Eurich, 444 Mass. 813, 815 (2005). See Mass. G. Evid. §803(6) (A), at 253 (2012); Citibank (South Dakota) N.A. v. Van Buskirk, 2010 Mass. App. Div. 198, 199 (though of questionable weight, affidavit found to support summary judgment where affiant stated that her affidavit “was based on personal knowledge and review of business records” maintained “in the ordinary course of Citibank’s business” and that “she was authorized to make this affidavit on behalf of Citibank and share [d] custodianship and [had] access to all of the documents in the possession of Citibank germane to this case” — though of questionable weight, affidavit found to support summary judgment for liability). Even less so can Davis competently testify as to “certain information provided to us by [Central Mortgage’s] attorneys,” whatever such information may be. For that, only Central Mortgage’s attorneys can testify, either as to their own actions or matters set forth in their business records.
The inadequacy and resulting inadmissibility of the Davis affidavit under G.L.c. 244, §15, however, does not void the sale to HSBC. While a §15 affidavit is “evidence that the power of sale was duly executed,” id., the statute does not make it the exclusive form of such evidence. “It is no objection to the validity of the sale that no affidavit of the sale was ever recorded.” Learned v. Foster, 117 Mass. 365, 372 (1975). “The provision is intended to secure the preservation of evidence that the conditions of the power of sale named in the deed have been complied with. It is for the protection of those claiming under the sale, and to prevent litigation.” Field v. Gooding, 106 Mass. 310, 312 (1871). Simply stated, it is further litigation that HSBC has failed to prevent by summary judgment.
Accordingly, HSBC has not shown by competent evidence that it complied with the statutory power of sale, and the Rule 56 burden never shifted to the Galebachs and Caress to raise issues of fact, including whether a snow storm chilled the sale, to defeat summary judgment. The matter must, therefore, be returned to the Somerville District Court for trial. The pretrial order for use and occupancy was *162 issued without statutory authority,[13] and is accordingly vacated.
So ordered.

 The Galebachs are referred to as Stephen H. Galebach and Diane W. Galebach in the mortgage and foreclosure documents.

 With respect to the jurisdiction of the District Court to determine the validity of title arising from a foreclosure deed, we note that while Bank ofN.Y. v. Bailey dealt specifically with the jurisdiction of the Housing Court, the main premise of that decision was that the plaintiff’s title is always an issue in summary process, and that the Housing Court’s jurisdiction in summary process is concurrent with both the Superior Court and the District Court. As we have in the past, see Bank of N.Y. v. Apollos, 2009 Mass. App. Div. 55, we thus view the District Court as having like jurisdiction over the issue of title. “The pursuit of ‘speedy and inexpensive’ summary process actions is compromised if the Housing Court [and the District Court by concurrent jurisdiction] must stay summary process proceedings while litigation on the validity of the foreclosure proceedings continues in another court. This creates precisely the type of unnecessary delay and inefficiency that the Legislature intended to eliminate when it reorganized the trial courts in the Commonwealth.” Bailey, supra at 334.

 The parties agree that no hearing on the motion for summary judgment was heard in the trial court. “While the applicable rules of procedure do not expressly require a hearing on motions for summary judgment, repeated references to such a hearing would suggest at least a strong preference that one be held.” Vaks v. Ryan, 2012 Mass. App. Div. 17, 19. The issues on the motion, however, were fully joined; the motion was decided with all issues before the court. Accordingly, we review that decision on the basis of the issues presented.

 Copies of the recorded documents attached to the Shea affidavit were all attested or certified by the register of the Middlesex South District Registry of Deeds.

 As stated by the Supreme Judicial Court, “Mortgage Electronic Registration Systems acts as nominee and as mortgagee of record for its members and appoints itself nominee, as mortgagee, for its members’ successors and assigns. See Mortgage Elec. Registration Sys. v. Saunders, 2 A.3d 289, 294 (Me. 2010), quoting MERSCORP, Inc. v. Romaine, 8 N.Y.3d 90, 100 (2006) (Kaye, C.J., dissenting in part).” Bailey, supra at 328 n.3.

 The record contains a loan modification agreement between the Galebachs and Central Mortgage as lender. The modification agreement is signed by the Galebachs and MERS as nominee for Central Mortgage. The date of the agreement is March 3, 2009, some seventeen months prior to the assignment of the mortgage from MERS to Central Mortgage. The modification agreement may be an indication that the mortgage note, or other evidence of debt (as opposed to the mortgage deed itself), was conveyed by Quicken Loans, Inc. to Central Mortgage, for which MERS *158 remained as nominee. However, the assignment of mortgage, executed, as noted, seventeen months after the loan modification agreement, still lists the assigning mortgage holder as MERS as nominee for Quicken Loans, Inc. Whether during the interim Central Mortgage conveyed the mortgage note back to Quicken Loans, Inc. or whether a scrivener’s error occurred somewhere, cannot be determined. In any event, the discrepancy is immaterial for two reasons. First, there is no authority, and the Galebachs have cited none, that the identity, or change of identity, of the beneficiary (Quicken Loans, Inc. or Central Mortgage) of the lending nominee (MERS) at any given time be correctly stated on the record. Second, until the assignment of the mortgage, as opposed to the note, the mortgage holder of record continued to be MERS as nominee for Quicken Loans, Inc. “In Massachusetts, where a note has been assigned but there is no written assignment of the mortgage underlying the note, the assignment of the note does not carry with it the assignment of the mortgage. Barnes v. Boardman, 149 Mass. 106, 114 (1889).” United States Bank Nat'l Ass’n v. Ibanez, 458 Mass. 637, 652 (2011). Moreover, while the Supreme Judicial Court has recently concluded that a “mortgagee” exercising the statutory power of sale must be the “person or entity then holding the mortgage and also either holding the mortgage note or acting on behalf of the note holder” (emphasis added), Eaton v. Federal Nat’l Mtge. Ass’n, 462 Mass. 569, 571 (2012), the record indicates — and the Galebachs have not suggested otherwise — that at the time of the foreclosure, the mortgagee was Central Mortgage and that either Central Mortgage itself was the note holder or was acting on behalf of Quicken Loans, Inc. Further, the holding in Eaton was pronounced as prospective to foreclosure sales conducted after June 22, 2012, and has no application to this case. Id. at 588-589.

 Exhibit A is a copy of the published notice and exhibit B the assignment of bid.

 While G.Lc. 244, §14 calls for notice by registered mail, G.L.c. 4, §7, Forty-fourth, allows for certified mail, stating: ‘“Registered mail’ when used with reference to the sending of notice or of any article having no intrinsic value shall include certified mail.”

 (12) Affidavit of Sale under Power of Sale in Mortgage.
[To be filled in] named in the foregoing deed, make oath and say that the principal [to be filled in] interest [to be filled in] obligation [to be filled in] mentioned in the mortgage above referred to was not paid or tendered or performed when due or prior to the sale, and that I published on the [to be filled in] day of [to be filled in] in [to be filled in], in the [to be filled in], a newspaper published or by its title page purporting to be published in [to be filled in] aforesaid and having a circulation therein, a notice of which the following is a true copy:
(Insert advertisement.)
Pursuant to said notice at the time and place therein appointed, I sold the mortgaged premises at [to be filled in] public auction by [to be filled in] an auctioneer, to [to be filled in], above named, for [to be filled in] dollars, bid by him, being the highest bid made therefor at said auction.
Sworn to by the said [to be filled in] 19 [to be filled in], before me.

 A “motion to strike is the proper device for raising an insufficiency in an affidavit.” Duffy, supra at 198. The Galebachs did not move to strike the affidavit, but, as indicated in note 5, supra, no hearing was conducted on the motion for summary judgment, thus precluding such an opportunity.

 The Galebachs admitted to the trial court that they defaulted on their mortgage payments and that they now live at the Premises rent free. However, recovery for use and occupancy in a summary process action requires a judgment. G.L.c. 239, §§2, 3. See Lowell Hous. Auth. v. Save-Mor Furniture Stores, Inc., 346 Mass. 426 (1963). It may also be ordered as a condition of the appeal bond after judgment. G.L.c. 239, §§5, 6. Neither in its pretrial motion for use and occupancy, nor in its brief, has HSBC cited any statute that prorides for a pretrial order for such relief pending the trial of a summary process action, presumably because none exists.